**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 98-CR-86-TCK** |
| | ) | |
| **JASON RYAN EATON,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**OPINION AND ORDER**

Before the Court is the Defendant Jason Ryan Eaton's ("Eaton's") Motion for Reduction of Sentence filed pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Doc.91). On June 23, 2022, the Government filed its Response in Opposition (Doc. 93).

Eaton seeks a reduction in sentence based on extraordinary and compelling circumstances, and a combination of factors which warrant relief.  The Government urges the Court to deny Eaton's § 3582(c)(1)(A) motion based on the contention that Eaton is not eligible for compassionate release. *Id.* Specifically, the Government argues that Eaton's claims do not constitute "extraordinary and compelling reasons" warranting relief. (Doc.93).  Based on the following, Eaton submits the Government is wrong as a matter of law as to his eligibility for relief under 18 U.S.C. § 3582(c)(1)(A). Further, Eaton maintains that he is not a danger to the community and that the 18 U.S.C. § 3553(a) factors support a reduction in sentence.

**I. Background**

 In March and April of 1998, Eaton robbed two Tulsa gas stations, wielding a pistol. (PSR at ¶¶ 7-11). He attempted to rob a third, shooting a clerk in the process. (Id. at ¶ 12). A grand jury returned a six-count indictment, charging Eaton with two counts of Hobbs Act robbery, in violation of 18 U.S.C. §1951 (Counts One and Three); two counts of using and carrying a firearm during

and in relation to the Hobbs Act robberies, in violation of 18 U.S.C. § 924(c) (Counts Two and Four); one count of attempted Hobbs Act robbery (Count Five); and a third violation of § 924(c) in connection with the attempted Hobbs Act robbery (Count Six). (Doc. 1). In 1998, Eaton pleaded guilty to Counts Two, Four, and Five of the indictment, pursuant to a plea agreement in which the government agreed to dismiss the two Hobbs Act robbery counts in Counts One and Three, and the third § 924(c) violation in Count Six. (See PSR at ¶¶ 5-6). Eaton filed a motion to withdraw his guilty plea, which this Court denied. This Court then sentenced Eaton to a total of 468 months imprisonment, comprised of consecutive terms of 168 months on Count Five, 60 months on Count Two, and 240 months on Count Four.

Although Eaton has sought unsuccessfully to obtain relief from this sentence, in December 2018, Congress passed the First Step Act, which eliminated the practice of enhancing § 924(c) counts in a first case and empowered defendants to seek compassionate release from the courts. First Step Act of 2018, Pub. L. No. 115-391, § 403, 132 Stat. 5221–22. Pursuant to those changes, on February 16, 2022, Eaton submitted a written request to the warden at his facility asking for a reduction of his sentence under 18 U.S.C. § 3582(c)(1)(A)(i). The request was denied by the warden at his facility on March 2, 2022.

Since Eaton's sentencing in 2003, significant reforms have been made within the criminal justice system to avoid excessively long prison sentences. Although many changes have not been deemed retroactively applicable, numerous district courts have found that the massive sentencing disparities caused by recent legislation, as well as a combination of other factors, may warrant a reduction in sentence through 18 U.S.C. § 3582(c)(1)(A).

## II. Applicable Law

In December 2018, Congress enacted the First Step Act ("FSA") which modified §3582(c)(1) of Title 18 of the United States Code to allow a defendant to bring a motion for modification of sentence where "extraordinary and compelling reasons warrant such a reduction[.]" 18 U.S.C. § 3582(c)(1)(A)(i). Section 3582(c) now reads:

> (c) Modification of an Imposed Term of Imprisonment. –The court may not modify a term of imprisonment once it has been imposed except that—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in § 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c) for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under § 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A) (emphasis added).

If the Court finds the exhaustion requirements are met and extraordinary and compelling circumstances are present, the Court may reduce a term of imprisonment "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Further, the statute requires the Court "to consider the factors set forth in [18 U.S.C. §] 3553(a) to the extent they are applicable." *Id.*; See also, *United States v. Maumau*, 993 F.3d 821, 831 (10th Cir. Apr. 1, 2021).

## A. Exhaustion Requirement

Although there has been a significant split among district courts on whether the exhaustion requirement of § 3582(c)(1)(A) is jurisdictional and/or excusable, the Tenth Circuit Court of Appeals has recently held that exhaustion should be "treat[ed] as a mandatory claim-processing rule." *United States v. Watson*, No. 20-5046, ft.n. 1 at 2 (10th Cir. June 24, 2021) citing *Hamer v. Neighborhood Hous. Servs. Of Chicago*, 138 S.Ct. 13, 17 (2017)("If properly invoked, mandatory claim-processing rules must be enforced, *but they may be waived or forfeited*." (emphasis added)).

## B. Extraordinary and Compelling Circumstances

As many district courts have noted post-First Step Act, "Congress has not specified the circumstances that qualify as 'extraordinary and compelling reasons' except to state that a reduction pursuant to this provision must be 'consistent with applicable policy statements issued by the Sentencing Commission." *United States v. Maumau*, 993 F.3d 821, 831 (10th Cir. Apr. 1, 2021); *United States v. Bucci*, 2019 WL 5075964, at *1 (D. Mass. Sept. 16, 2019). The applicable policy statement of the Sentencing Commission can be found at U.S.S.G. § 1B1.13. The commentary to this section states:

1. Extraordinary and Compelling Reasons. –Provided the defendant meets the requirements of subdivision (2) [not a danger to society], extraordinary and compelling reasons exist under any of the circumstances set forth below:

(A) Medical Condition of the Defendant. –

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

4

(III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant. –The defendant (i) is at least 65 years old; (ii) is experiencing serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances. –

(i) The death or incapacitation of a caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons. –As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13.

However, the Tenth Circuit has recently clarified this position and held that § 1B1.3 is not binding on district courts "when a defendant files a motion to reduce sentence under § 3582(c)(1)(A) directly with the district court." *Id.*

### C. Sentencing Commission Policy and 18 U.S.C. § 3553(a) Factors

Section 3582(c)(1)(A) allows for a court to reduce a term of imprisonment "after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that– (i) extraordinary and compelling reasons warrant such a reduction; … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]"

The § 3553(a) "factors include, among other things, '(1) the nature and circumstances of the offense and the history and characteristics of the defendant,' as well as '(2) the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant.'" *United States v.*

*Rodriguez-Orejuela*, 2020 WL 2050434, at *4 (S.D. Fla. Apr. 28, 2020) (quoting 18 U.S.C. § 3553(a)).

Under § 1B1.13 of the U.S. Sentencing Guidelines, the Court may reduce a term of imprisonment after consideration of the § 3553(a) factors, if the Court determines that:

(1) (A) extraordinary and compelling reasons warrant the reduction;

(2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13(1)-(3).

### III. A Reduction in Sentence Under 18 U.S.C. § 3582(c)(1)(A)(i) is not Warranted

#### A. Eaton Has Met the Exhaustion Requirements of § 3582(c)(1)(A)

As noted *supra*, on February 16, 2022, Eaton submitted a written request to the warden requesting a compassionate release pursuant to 18 U.S.C. § 3582 (c)(1)(A)(i).  The warden at his facility denied his request on March 2, 2022. Therefore, Eaton has fully exhausted his administrative appeals and has met the exhaustion requirements under 18 U.S.C. § 3582(c)(1)(A).

#### B. Extraordinary and Compelling Circumstances Justify a Reduction in Sentence

In considering Eaton's motion, the Court has reviewed the three-part test adopted by the Tenth Circuit in *United States v. Maumau*, 993 F.3d 821, 831 (10th Cir. Apr. 1, 2021) (citing *United States v. Jones,* 980 F.3d 1098, 1107 (6th Cir. 2020)). Step one requires the Court to determine at its discretion, whether "extraordinary and compelling reasons" exist to warrant a sentence reduction. Step two requires that the Court find whether such reduction is consistent with applicable policy statements issued by the United States Sentencing Commission. Step three requires the Court to consider any applicable 18 U.S.C. § 3553(a) factors and determine whether the reduction authorized by steps one and two is warranted under the particular circumstances of

the case. However, because the policy statements of the Sentencing Commission have not been updated since enactment of the First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194 (2018), which amended 18 U.S.C. § 3582(c)(1)(A) to allow defendants to file motions for compassionate release directly with the Court, the existing policy statements are not applicable to motions filed directly by defendants. *Id*. at 12. Further, when any of the three prerequisite steps are lacking, the Court may deny a compassionate release motion and does not need to address the other steps. The Court must address all three steps when granting such motion. *Id.* at 13 n.4. (citing *United States v. Navarro*, 986 F.3d 668, 670 (6th Cir. 2021)). See also *United States v. McGee*, 992 F.3d 1035 (10th Cir. 2021).

Here, Eaton's situation shares three of the characteristics that the Tenth Circuit agreed were extraordinary and compelling in *Maumau*: (a) Eaton was only 18 years old at the time of the offense conduct, (b) he received an extraordinarily long sentence, and (c) because of the First Step Act's changes to those stacking provisions, he would face a significantly shorter sentence if sentenced today. Accordingly, this Court may exercise its discretion to reduce Eaton's sentence.

### C. A Reduction in Sentence is not Warranted After Consideration of the 18 U.S.C. § 3553(a) Factors and Sentencing Guidelines Policy

Having established that Eaton has exhausted his administrative appeal, and that extraordinary and compelling circumstances exist, the Court must consider the factors under 18 U.S.C. § 3553(a) and the Sentencing Guidelines policy to determine whether a reduction in sentence is warranted.

Importantly, evidence of post-sentence rehabilitation is likely the most critical of core considerations for the Court in a § 3582(c) proceeding. In *Pepper v. United States*, 131 S.Ct. 1229, 1241 (2011), the Court emphasized the important nature of post-sentence rehabilitation, stating that "there would seem to be no better evidence than a defendant's post incarceration conduct." *Id.*

Indeed, the Court continued, "Post-sentencing rehabilitation may also critically inform a sentencing judge's overarching duty under § 3553(a) to 'impose a sentence sufficient, but not greater than necessary' to comply with the sentencing purposes set forth in § 3553(a)(2)." *Id*. at 1242.[1] See e.g. *United States v. Millan*, 91-CR-685 (LAP), 2020 WL 1674058, at *9 (S.D.N.Y. Apr. 6, 2020) (granting a sentence reduction under § 3582(c) to a defendant who ran a drug-trafficking organization, given that "[the defendant], in the face of a life sentence, assumed a positive outlook and attitude towards life, sought to improve himself to the utmost extent possible and was motivated to do so notwithstanding his circumstances").

Looking to the history and characteristics of the defendant pursuant to 18 U.S.C. § 3553(a)(1), his conduct while incarcerated demonstrates the danger he continues to pose to the community, and warrants denial of his motion. Under the applicable policy statement, this Court must deny a sentence reduction unless it determines the defendant "is not a danger to the safety of any other person or to the community." USSG § 1B1.13(2). Additionally, this Court must consider the § 3553(a) factors, as "applicable," as part of its analysis. See § 3582(c)(1)(A); *United States v. Maumau*, 993 F.3d 821, 832 (10th Cir. 2021); (citing *United States v. Jones,* 980 F.3d 1098, 1107 (6th Cir. 2020)).   Those factors demonstrate that Eaton remains a significant danger to the community.

---

[1] "In addition, evidence of post sentencing rehabilitation may be highly relevant to several of the § 3553(a) factors that Congress has expressly instructed district courts to consider at sentencing. For example, evidence of post sentencing rehabilitation may plainly be relevant to 'the history and characteristics of the defendant.' § 3553(a)(1). Such evidence may also be pertinent to 'the need for the sentence imposed' to serve the general purposes of sentencing set forth in § 3553(a)(2) – in particular, to 'afford adequate deterrence to criminal conduct,' 'protect the public from further crimes of the defendant,' and 'provide the defendant with needed educational or vocational training…or other correctional treatment in the most effective manner." §§3553(a)(2)(B)-(D); see *McMannus,* 496 F.3d, at 853 (Melloy, J., concurring) ("In assessing…deterrence, protection of the public, and rehabilitation, 18 U.S.C. § 3553(a)(2)(B)(C) & (D), there would seem to be no better evidence than a defendant's post incarceration conduct"). *Id*.

First, although he began by committing typical Hobbs Act robberies, Eaton's offense conduct escalated, becoming significantly more violent. In his first two robberies, Eaton pointed a gun at two gas station clerks and demanded money. (PSR at ¶¶ 7-9, 10). During the second robbery, he threatened to shoot the clerk if he did not give him all the money. *Id.* at ¶ 11. During the third robbery, he told the victim, "No, I'm just going to kill you right here," and asked him if he wanted to turn around or kneel down. Terrified for his life, the victim fought back, but Eaton shot him as he escaped the walk-in cooler, resulting in life-changing injuries. *Id.* at ¶¶ 12, 16–18.

Next, Eaton's history and characteristics weigh against a reduction. Although Eaton was only 18 years old when he committed the charged armed robberies, he had already committed several serious crimes as a juvenile. (PSR at ¶¶ 37–40). At 15, he stipulated to robbery by force and assault and battery. *Id.* at ¶ 37. At 16, he committed two burglaries, but pleaded to lesser offenses. During one burglary, he "stole a Maltese dog from the back yard of its owner" and "held the dog down while his co-defendant ran it over with a motorcycle." *Id*. at ¶ 39. He was placed on probation for each of these juvenile offenses. Finally, at 16, Eaton was arrested after firing, without provocation, at passengers in another vehicle, and assaulting the police officer who was transporting him to the juvenile bureau. *Id*. at 40. Although he was placed in DHS custody after these offenses, he ran away from custody while on leave. *Id*.

Like his criminal history, Eaton's conduct while incarcerated demonstrates his likelihood of recidivism. First, as recently as last December, Eaton evinced "no interest" in the Bureau of Prisons' flagship residential drug abuse program. (Ex. 1, Inmate Profile at 1). Notably, the same program review notes that Eaton has "a need in the areas of Anger/Hostility, Cognitions, Medical, Rec/Leisure/Fitness, Substance Abuse, Trauma, and Work, based on [his] Risk and Needs Assessment," and recommends that he takes various courses and actions to meet those needs. *Id.*

These deficits suggest that Eaton needs additional time to complete these requirements to improve his chances of success upon release and weigh heavily against the time-served sentence he requests.

Eaton's disciplinary history supports the same conclusion, reflecting many infractions, including two for assault and three for fighting with another person. (Ex. 1 at 10-13). Although many of his infractions occurred in the first decade of his incarceration, Eaton's 2021 discipline for fighting was so serious it resulted in his transfer from Seagoville (SEA), a low-security federal correctional institution, to Phoenix (PHX), a medium-security facility. (Compare Ex.1 at 1 with *Id*. at 10; see also Def. Ex. 2 at 12, noting "No other progress – initial team since transferring from SEA due to Code 201: Fighting."). That infraction may also explain the BOP's reassessment of Eaton's recidivism risk level from low in April of 2021, to medium on December 28, 2021. (Compare Def. Ex. 2 at 12 with Ex.1 at 2). Taken together, Eaton's violent offense conduct, his violent criminal history, his failure to complete necessary programming, and his recent violent disciplinary history all suggest he poses a significant risk of recidivism.

### IV. CONCLUSION

Based on the foregoing, the Court denies Eaton's Motion for Compassionate Release (Doc. 91).

**IT IS SO ORDERED this 13th day of July, 2022.**

TERENCE C. KERN
United States District Judge